**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**RENEE E. GLADLE,**

          **Plaintiff,**

 **vs.**              **7:12-CV-284 (NAM)**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,**

          **Defendant.**
_____

**APPEARANCES:**

Conboy, McKay, Bachman & Kendall, LLP  Lawrence D. Hasseler, Esq.
407 Sherman Street
Watertown, New York 13601
*Attorneys for Plaintiff*

Richard S. Hartunian         Rebecca H. Estelle,
United States Attorney for       Special Assistant U.S. Attorney
the Northern District of New York
100 South Clinton Street
Syracuse, New York 13261

Stephen P. Conte
Regional Chief Counsel, Region II
Office of General Counsel
Social Security Administration
26 Federal Plaza
New York, New York 10278
*Attorneys for Defendant*

**Norman A. Mordue, Senior U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.  INTRODUCTION**

  Plaintiff Renee E. Gladle brings the above-captioned action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of the Commissioner of Social Security's decision to deny her application for disability insurance benefits. Plaintiff claims that

degenerative disc disease, spinal stenosis and depression have rendered her disabled. Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## II. PROCEDURAL HISTORY

Plaintiff filed two applications for disability insurance benefits: the first on April 2, 2003 ("first application"); and the second on June 23, 2005 ("second application"). In both applications, plaintiff alleged a disability onset date of April 2, 2003. The Commissioner denied plaintiff's first application but partially granted plaintiff's second application, finding plaintiff disabled as of January 29, 2005. Plaintiff sought judicial review of the Commissioner's denial of her first application. *See Gladle v. Astrue*, No. 7:05-CV-797, 2008 WL 4411655 (N.D.N.Y. Sep. 23, 2008) ("*Gladle* I").

In *Gladle* I, the Court found: (1) that the ALJ properly applied the treating physician rule and that substantial evidence supported his decision to give less than controlling weight to the opinion of plaintiff's treating physician; (2) that the ALJ properly assessed plaintiff's residual functional capacity ("RFC"); (3) that the ALJ applied the correct legal standard when evaluating the credibility of plaintiff's complaints of disabling pain and that his finding that plaintiff's complaints were not "entirely credible" was supported by substantial evidence; and (4) that, in view of plaintiff's nonexertional limitations, the ALJ should have elicited vocational expert testimony to determine whether she had the ability to perform other work. *Gladle* I, 2008 WL 4411655. Accordingly, the Court remanded the matter "for consideration of other evidence and/or vocational expert testimony on the issue of the impact of Plaintiff's nonexertional impairments on her ability to perform other work existing in significant numbers in the national

2

economy". *Id.* at *7.

On January 22, 2009, pursuant to the Court's remand order, the Appeals Council returned the first application to the ALJ for "further proceedings consistent with the order of the court." T. 694. In the same order, the Appeals Council affirmed the ALJ's decision to grant plaintiff's second application for disability insurance benefits.[1] It explained:

> On June 23, 2005, the claimant filed a subsequent claim for a period of disability and disability insurance benefits. On December 7, 2007, an [ALJ] issued a favorable decision. He found that the claimant had the following severe impairments: diabetes mellitus, type II; degenerative disc disease of the cervical spine and of the lumbosacral spine. The [ALJ] then found that the claimant retained the residual functional capacity to perform the full range of sedentary work; and that Medical Vocational Rule 201.14 directs a finding that the claimant is disabled. In his decision the [ALJ] noted that the claimant had filed a prior claim which was denied by an [ALJ] on January 28, 2005. The [ALJ] indicated that he could only address the period from January 29, 2005 to present. Therefore, he found that the claimant was disabled as of January 29, 2005.
>
> Upon reviewing the evidence of record in the subsequent claim, the Appeals Council concludes that the [ALJ's] decision is supported by the record. Therefore, the Appeals Council <u>affirms</u> the decision [regarding the second application]. However, the Appeals Council notes that the [ALJ] only considered the period from January 29, 2005 to the date of his decision, and not the period prior to the other [ALJ's] decision. The Appeals Council concludes, as required by the District Court Order, that further development is necessary for the period prior to January 29, 2005. Therefore the [ALJ] will address only the period from April 2, 2003 through January 28, 2005.

T. 695.

On February 25, 2010, the ALJ held a hearing at which plaintiff and a vocational expert testified. T. 802-38. On April 7, 2010, the ALJ issued a decision again finding that plaintiff was not disabled. With the exception of finding, in accordance with *Gladle* I, that plaintiff could not

---

[1]As stated above, plaintiff received a partially favorable decision on her second application for disability insurance benefits. Specifically, ALJ Joseph G. Medicis, Jr., issued a decision finding plaintiff to be disabled as of January 29, 2005.

3

perform the full range of light work due to her nonexertional impairments,[2] the ALJ reached the same conclusions at each of the first four steps of the five-step disability analysis.[3]

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the relevant time period. T. 684. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and degenerative disc disease of the cervical spine with spondylosis. T. 684. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. T. 686. At step four, the ALJ found had the residual functional capacity "to perform less than the full range of light work", explaining that:

> After careful consideration of the entire record, the undersigned finds that, at all times relevant to this decision the claimant had the [RFC] to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, stand 15 minutes at a time for a total of two hours in an eight-hour work day, walk 30 minutes at a time for a total of two hours in an eight-hour work day and sit 30 minutes at a time for a total of six hours in an eight-hour work day. She cannot climb ladders or scaffolds, but can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs.

---

[2]The ALJ previously found that plaintiff had the RFC to perform "substantially all of the requirements of light work."

[3]There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

T. 686. In reaching this conclusion, the ALJ found, as he had in his previous decision, that the opinion of her treating physician was not entitled to controlling weight and that plaintiff's subjective complaints of disabling pain were not entirely credible. At step five, relying on the testimony of the vocational expert, the ALJ found that although plaintiff's impairments prohibited her from returning to any past relevant work, she had the residual functional capacity to perform other work: "from April 2, 2003 through January 28, 2005, considering the claimant's age, education, work experience, and [RFC], the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." T. 691.

On December 23, 2011, the Appeals Council issued a letter advising plaintiff that it "found no reason under our rules to assume jurisdiction." T. 665. Thus, the ALJ's decision became the Commissioner's final decision. T. 666. This action followed.

### III. MEDICAL EVIDENCE

The Court adopts the summary of the "Medical Evidence" set forth in the "Brief on Behalf of Plaintiff", Dkt. No. 13, pp.2-9, "with the exception of any inferences, arguments, or conclusions asserted therein." Dkt. No. 16.

### IV. DISCUSSION

Plaintiff advances the following arguments: (1) that the ALJ erred when he failed to accord controlling weight to her treating physician's opinion; (2) that the ALJ failed to assess her residual functional capacity properly; (3) that the ALJ failed to assess her credibility properly; and (4) that substantial evidence does not support the ALJ's conclusion that there is significant work in the national economy that plaintiff is able to perform. As stated above, the Court specifically addressed plaintiff's first three arguments in *Gladle* I and found that the

5

Commissioner employed the correct legal standards and that the findings were supported by substantial evidence. The Court must therefore consider whether there is any basis for reconsidering these issues.

### A. Law of the Case

"ALJs have acknowledged throughout the years that the remand instructions they receive from the federal district court are the law of the case." *Thompson v. Astrue*, 583 F.Supp.2d 472, 475 (S.D.N.Y. 2008) (quoting *Ischay v. Barnhardt*, 383 F.Supp.2d 1199, 1214–18 (C.D.Cal. 2005)). "Similarly, the Commissioner is implicitly limited by any findings of the district court regarding the application for disability benefits." *Thompson*, 583 F.Supp.2d at 475. Thus, *Gladle* I is the law of the case for purposes of this action. *See Calderon v. Astrue*, 683 F.Supp.2d 273, 276 (E.D.N.Y. 2010) (finding that while the Second Circuit had not addressed the question, the law of the case doctrine applied to Social Security appeals in light of the numerous cases supporting that proposition).

"The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

Plaintiff does not contend that there is new evidence or an intervening change of controlling law. Plaintiff argues instead that a finding that she was not disabled during the relevant time period (April 2, 2003 to January 28, 2005) "creates the untenable position by the Administration, in light of [the] prior favorable decision, that plaintiff retained the capacity to

6

perform a full range of light work until January 28, 2005, then fully lost all work capacity and became disabled the next day, on January 29." Dkt. 13, p.14.

The favorable decision, however, addressed a later time period, January 29, 2005 and after, relied on evidence probative of that time period, and noted that plaintiff had developed an additional severe impairment: diabetes milletus, type II. Plaintiff does not argue, nor does the evidence in the record indicate, that the evidence supporting the later favorable decision is relevant to the time period at issue in this case "in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date." *Lisa v. Sec'y of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991) (quoting *Gold v. Sec'y of Health, Educ. and Welfare*, 463 F.2d 38, 41-42 (2d Cir. 1972) (internal quotations omitted)); *see also Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (holding that the district court did not err in denying the plaintiff's motion to remand his initial application in light of a later award of benefits based on his second application because the second application involved different medical evidence, a different time period, and a different age classification). Indeed, the evidence underlying the favorable decision did not indicate that plaintiff's condition during the earlier time period was more severe than originally believed but that it progressively worsened. T. 871; *see Ryles v. Sec'y of Health and Human Servs.*, 526 F.Supp. 1141, 1143 (E.D.N.Y. 1981) (noting that the relevant inquiry is a claimant's condition and relevant law during the time period for which benefits were denied and that if a claimant's condition should later deteriorate after a claim denial, the proper procedure is to reapply for disability benefits). Thus, the subsequent favorable decision does not compel reversal

of the ALJ's decision or reconsideration of the ALJ's application of the treating physician rule or assessment of plaintiff's residual functional capacity and credibility. *See Duross, v. Commissioner of Social Security*, Civ. No. 1:05-CV-368, 2008 WL 4239791, at *5 (N.D.N.Y. Sep. 11, 2008) (denying the plaintiff's request "to consider the effect of a latter award of benefits for a different time period as probative on the issue of disability during the time period at issue in this appeal.").

Further, having reviewed the record, the Court finds the ALJ applied the correct legal standard and that substantial evidence supports his findings on these issues. Accordingly, the Court only considers the ALJ's determination at step five.

### B.    Step Five - Vocational Expert

Plaintiff argues that the Commissioner's conclusion that there is significant work in the national economy that she can perform is not supported by substantial evidence. Plaintiff asserts that the ALJ "misrepresented the [vocational expert's] testimony" and the hypothetical the ALJ relied on did not represent her limitations.

At the fifth step of the disability analysis, the Commissioner bears the burden of proving that a claimant has the residual functional capacity to perform other jobs and that these jobs exist in significant numbers in the national economy. 20 C.F.R. §§ 416.920, 416.960. When non-exertional impairments limit the range of work a claimant can perform the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986). The testimony of a vocational expert is useful, however, only if it addresses the particular limitations of the claimant. *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).

8

Further, there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983); *see also Melligan v. Chater*, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996) (If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion that the claimant is not disabled).

The ALJ found plaintiff's residual functional capacity to be as follows:

- Lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently.

- Stand for 15 minutes at a time for a total of 2 hours in an 8-hour workday.

- Walk for 30 minutes at a time for a total of 2 hours in an 8-hour workday.

- Sit for 30 minutes at a time for a total of 6 hours in an 8-hour workday.

- No climbing ladders or scaffolds.

- Occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs.

At the hearing, the ALJ asked the vocational expert to assume that the "individual" had "postural" limitations that prohibited her from work involving "ladders or scaffolds" but could, occasionally, involve "ramp, stairs, balance, stoop, kneel, crouch, and crawl." T. 830. Thus, the first portion of the ALJ's hypothetical question accounted for plaintiff's postural, nonexertional limitations. The ALJ then asked the vocational expert to assume these postural limitations, but also to assume that the hypothetical individual could stand "two out of an eight-hour period, would need to change postures more than momentarily approximately every 15 to 20 minutes; and the walking, again, two out of an eight-hour period, but would have to change postures . . . every 30 to 45 minutes; and the seated posture, again, the same six out of eight hours, but would

9

have to change her posture periodically, every 30 to 60 minutes . . . ." T. 832. These assumptions accurately reflected plaintiff's exertional limitations and accounted for her need to change postures after a period of time. Thus, the vocational expert's response, that a hypothetical individual with these exertional and postural limitations could perform work as a mail clerk, office messenger, or assembler, T. 832, 833, and that these positions existed in significant numbers in the national economy, T. 831, constituted substantial evidence on which the ALJ was entitled to rely to satisfy his burden at step five. Accordingly, the Court finds the Commissioner's decision to deny plaintiff's first application for disability insurance benefits is supported by substantial evidence and that plaintiff's arguments are without merit.

## V. CONCLUSION

For the above reasons, it is hereby

**ORDERED** that the Commissioner's decision to deny plaintiff's first application for disability insurance benefits is **AFFIRMED**; and it is further

**ORDERED** that the Commissioner's motion for judgment on the pleadings is **GRANTED**; and it is further

**ORDERED** that plaintiff's motion for judgment on the pleadings is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court enter judgment in favor of the Commissioner and close this case.

**IT IS SO ORDERED.**

Date: August 27, 2013

Norman A. Mordue
Senior U.S. District Judge